## IN THE U.S. DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

Tracie Chatelain,                                    Civil Action No.

    **Plaintiff**

v.

Union General Hospital System,            **JURY TRIAL DEMAND**

Defendants.

_____

## COMPLAINT AND JURY DEMAND

Comes Now, Plaintiff Tracie Chatelain ("Plaintiff" or "Chatelain") and for her Complaint against Defendant Union General Hospital System ("UGHS"), states as follows:

## PARTIES, JURISDICTION AND VENUE

1. Chatelain is an adult female over 18 residing in Young Harris, Georgia.

2. Defendant UGHS is a for-profit company registered with the Georgia Secretary of State to do business in Georgia, operating in Blairsville, Union County, Georgia, within this Federal District and Division.

3. Chatelain brings this claim pursuant to the Americans with Disabilities Act, which presents a federal question. As such, jurisdiction over this action is conferred pursuant to 28 USC Section 1331.

4. Chatelain also brings this claim for willful violation of the Fair Labor Standards Act ("FLSA"), as amended, 29 USC 201 et seq., in which Chatelain seeks unpaid wages and damages she suffered, including liquidated damages and attorneys' fees.

5. Defendant UGHS has substantial ties to the State of Georgia and the Northern District of Georgia given it operates a business located in Georgia and maintains and maintained offices at all relevant times hereto, conducting regular, not isolated acts of business in Georgia and in the Northern District of Georgia.

6. Chatelain contends the wrongful acts complained of herein took place within the Northern District of Georgia, Gainesville Division and UGHS has a registered agent here. Therefore, venue is proper in this district and division pursuant to 28 USC Section 1391(b) and (d).

7. Therefore, the Court possesses jurisdiction over Defendant.

## ADMINISTRATIVE PREREQUISITES

8. Chatelain filed a Charge with the EEOC (410-2023-00220), who then determined that there was cause to believe discrimination occurred.

9. Subsequent conciliation was unsuccessful and the EEOC issued a Right to Sue letter on February 12, 2025, stating that Chatelain had to file a lawsuit, if at

all, within 90 days of his receipt of that letter (Ex. 1 hereto). This lawsuit is therefore timely.

## FACTS

10. Chatelain was hired by UGHS in approximately October 2021 and worked for UGHS as an executive assistant to CEO & Contract Manager.

11. Chatelain reported to UGHS CEO, Kevin Bierschenk.

12. Chatelain was promised and understood that there would be flexibility as to work hours which was an important reason she accepted the job.

13. During her employment, Chatelain frequently worked hours she was not paid for.

14. On October 3, 2022, Chatelain notified UGHS CEO Kevin Bierschenk ("Bierschenk") and other UGHS management that she woke up with her eye red, painful and swollen shut.[1]

15. Her eye was red, leaking, flaking and scaly – spongiotic dermatitis.

16. Her vision in the swollen eye was severely restricted compared to most people in the general population.

17. She called out for the day as she tried to get a doctor appointment.

18. Bierschenk responded via text with the "ok" sign.

---

[1] Chatelain received a May 2, 2024 Tolling Letter from the EEOC, stating that any delay was its fault and that Chatelain submitted a timely Inquiry. (Ex. 2).

19. She then had a medical appointment on October 3, 2022 and received two prescriptions.

20. Chatelain was advised by her medical provider to follow up the next day if her condition did not significantly improve.

21. On October 4, 2022, Chatelain's condition worsened – she woke up with a fever and here eye was swollen shut.

22. Further, the lymph nodes in her neck were extremely swollen and painful.

23. On October 4, 2022, Chatelain advised UGHS CEO, Kevin Bierschenk, of her condition and that she would not be in the office that day.

24. UGHS and Bierschenk were aware that Chatelain is a cancer survivor.

25. At a medical appointment on October 4, 2022, Chatelain was advised that she likely had Bells Palsy due to one side of her face drooping.

26. Chatelain was advised by her medical provider to follow back up for a bells palsy test.

27. Bierschenk responded, "Not a problem. I hope you feel better."

28. On October 5, 2022, Chatelain still had a fever, her eye was swollen shut and painful – and she again advised Bierschenk that she would be staying home.

29. UGHS employee policy was to avoid work when employees had fevers.

30. On October 6, 2022 – in pain and with her eye still swollen, Chatelain went to the UGHS office prior to another medical visit, a visit that she made Bierschenk aware of prior to October 6, 2022.

31. Bierschenk came by her office and then immediately summoned her to his office.

32. When Chatelain entered Bierschenk's office per his request, the UGHS HR Director was there waiting, as well.

33. Bierschenk advised Chatelain that she was no longer qualified to receive UGHS benefits and that he would no longer pay the monthly amount for Chatelain's benefits.

34. Bierschenk mentioned a "third quarter" review of her time that he claimed supported the removal of benefits.

35. Chatelain had never heard of any such review for any employee.

36. Chatelain never received any kind of warning as to her performance or attendance. In fact, Chatelain advised Bierschenk during the interview process that she would be traveling and doing some work remotely and he agreed.

37. Chatelain commented that Bierschenk gave her a lot to think about after the ambush with the HR Director and Bierschenk responded that if Chatelain wanted to resign, to get him the resignation by the end of that day.

38. Chatelain did not provide any such resignation notice and never resigned.

39. After the meeting with Bierschenk and on the way to her medical appointment on October 6, 2022, Chatelain returned a call to the Nursing Home Administration as part of her UGHS job duties.

40. Chatelain went to her appointment on October 6, 2022 and the provider brought in another medical provider for a second opinion.

41. Chatelain's lymph nodes still somewhat swollen and she was told to stay on the medications and to get in with an eye specialist the next day.

42. The medical providers wanted to ensure that her "eyeball" had not been compromised or harmed with the medical condition and episode from which she was suffering.

43. Chatelain completed invoicing as part of her job duties on October 6, 2025.

44. Alon on October 6, 2025, UGHS CFO, Nick Townsend, texted Chatelain asking if she was going to be in on Friday and if she was going to work a notice period.

45. Chatelain had not resigned and advised him that she was at that moment focused on her health and would follow up.

46. Chatelain performed additional work that evening on more invoices and responded to emails, evidencing that she had not resigned.

47. On October 7, 2022, at 7:36a.m., Chatelain sent CFO Townsend a reminder that she had to see her eye doctor and she did in fact go to her medical appointment that day.

48. The appointment was an "emergency" appointment, afforded to her due to the serious nature of her condition.

49. Given Townsend's comment about "working a notice" which suggested resignation; and Bierschenk's previous comment about resignation – Chatelain wrote Bierschenk, Townend and HR Director Stacy Plante on October 7, 2022 at 11:58am to again clarify that she had not resigned.

50. Chatelain explained in that email that she was uncomfortable with the way the removal of her benefits was communicated to her during the ambush meeting and Chatelain explained that she was still receiving medical care for the relevant medical condition/episode.

51. Several hours later, Plante responded that she had conducted a review of Chatelain's third quarter 2022 hours worked and that Chatelain's benefit status would end effective October 9, 2022.

52. Although Chatelain never resigned, Planted suggested that she believed Bierschenk to have offered some sort of notice period for Chatelain to work – "two weeks??? – 30 days???? – to which you [Chatelain] replied that you would have to think about it…"

53. Plante communicated that Chatelain was a "no call/no show" on October 7, 2022, constituting "job abandonment" and that Chatelain was terminated.

54. There was no resignation and Chatelain confirmed this via email on 10/7/22 at 11:58 am.

55. Chatelain communicated her diagnoses and providers' opinions prior to the revocation of her benefits and termination.

56. From May 2022 – September 2022, Chatelain worked hours for UGHS for which she was not compensated.

57. UGHS was aware of this work performed.

58. Prior to filing an EEOC Charge, Chatelain requested information relating to the purported third quarter review (i.e., who performed it, why, when, whose hours were reviewed, copies of relevant documents, etc.) and a copy of UGHS' calculations as to hours worked.

59. UGHS was unable or unwilling to provide such information.

60. Chatelain contends other similarly situated employees were not terminated; nor did they have their benefits revoked for similar conduct.

61. Likewise, Chatelain suggested to UGHS prior to the filing of her Charge that she worked hours for which she was not compensated and requested data on same.

62. UGHS ignored Chatelain's requests in this regard.

## <u>COUNT ONE – VIOLATION OF THE ADA</u>

63. Chatelain suffered from a disability – the severe eye infection that kept her eye watery, scaly and swollen shut – spongiotic dermatitis. She is also a cancer survivor.

64. For a temporary time, Chatelain could not see out of the affected eye compared to the general population.

65. After Bierschenk heard about Chatelain's eye and possible bells palsy diagnosis and saw her eye and diagnosis, her benefits were almost immediately revoked and she was terminated almost immediately after.

66. UGHS also "regarded" Chatelain as having a disability – the severe eye infection/spongiotic dermatitis and bells palsy. Either is sufficient to maintain these claims.

67. UGHS believed Chatelain had a then-current major impairment at the time Chatelain's benefits were removed and she was fired.

68. Chatelain suffered damages as a result.

69. Those damages included but are not limited to financial damages and emotional distress that manifested itself into physical symptoms.

## <u>COUNT TWO – VIOLATION OF THE ADA (RETALIATION)</u>

70. Chatelain complained to Bierschenk and Plante orally about mistreatment during the October 6, 2022 meeting where her benefits were taken away and her job threatened – and then again to them the same day in writing.

71. Chatelain complained to UGHS CFO Nick Townsend in writing that same day and the next, October 7, 2022.

72. Plante wrote Chatelain on October 7, 2022 about the arbitrary absences review and again a few days later cementing the termination.

73. The fast turnaround in delivering the October 7, 2022 email formalizing the removal of benefits and the termination in the works is sufficient to establish a causal connection between the protected activity and the adverse actions.

74. Despite UGHS' contention that Chatelain was a no call/no show on October 7, 2022, she did in fact alert UGHS CFO Nick Townsend in writing as a reminder that she would have a medical appointment.

75. Damages include but are not limited to financial damages and emotional distress that manifested itself into physical symptoms.

## COUNT THREE – FAILURE TO ACCOMMODATE (ADA)

76. Chatelain explained to several high ranking company officials named herein and human resources that she needed time to make her doctor appointments during the relevant week. When she showed up to attempt her job duties, she was immediately summoned by Bierschenk and looked over and told her

benefits were being removed - and she was harassed with resignation inquiries.

77. UGHS contended that Chatelain's attendance that relevant week and ultimate no call/no show was the basis for her termination.

78. Chatelain repeatedly explained that she had not resigned and that she had to attend the medical appointments.

79. Chatelain was providing services and doing work for UGHS after she allegedly resigned.

80. As such, she adequately requested an accommodation in the form of flexibility with the appointments and to be free of harassment.

81. There are no magic words required to request an accommodation.

82. UGHS failed to accommodate Chatelain by permitting her to attend appointments without discipline and harassment and/or have her continue to work outside the office.

83. UGHS nevertheless accepted the benefit of Chatelain's efforts in this regard.

84. Damages include financial damages and emotional distress.

## COUNT FOUR – VIOLATION OF THE FLSA

85. Chatelain suffered for the benefit of UGHS by working hours without compensation.

86. UGHS failed to compensate Chatelain for each hour worked at minimum wage or above.

87. Chatelain alerted UGHS to this point prior to bringing suit.

88. UGHS was aware of its obligation and willfully chose not to pay Chatelain for all hours worked – instead, revoking he benefits and terminating her.

89. Chatelain is entitled to recover her unpaid minimum wages from UGHS in an amount to be determined at trial, in accordance with 29 USC Section 216(b).

90. As a result of the failure to pay minimum wages as alleged above, Chatelain is entitled to recover liquidated damages in an amount equal to her unpaid minimum wages.

91. As a result of the willful underpayment of minimum wages as alleged above, Chatelain is entitled to recover from UGHS her litigation costs and reasonable attorneys' fees.

WHEREFORE, Chatelain seeks:

a. Trial by jury;

b. Judgment on each Count of the Complaint;

c. Frontpay and backpay;

d. Compensatory and punitive damages;

e.  Unpaid wages and liquidated damages;

f.  Damages for emotional distress;

g.  Attorneys' fees and costs; and

h.  Any other relief the Court deems just and proper.

Respectfully submitted this 13th day of May 2025, by:

THE LAW OFFICE OF SETH N. KATZ, LLC

/s/Seth Katz
GA Bar No. 197411
The Law Office of Seth N. Katz
7742 Spalding Dr., # 365
Norcross, GA 30092
404-579-9466
skatz@snklaw.net

Counsel for Plaintiff